BALTIMORE & OHIO RAILROAD Co., Plaintiff, v. ACE
RUBBER PRODUCTS, Inc., Defendant.
BALTIMORE & OHIO RAILROAD Co., Plaintiff, v.
TANNEY-COSTELLO Inc., Defendant.
BALTIMORE & OHIO RAILROAD Co., Plaintiff, v.
R. C. A. RUBBER Co., Defendant.
AKRON, CANTON & YOUNGSTOWN RAILROAD CO., Plaintiff,
v. TANNEY-COSTELLO, Inc., Defendant.
AKRON, CANTON & YOUNGSTOWN RAILROAD Co., Plaintiff,
v. ACE RUBBER PRODUCTS Co., Defendant.
PENNSYLVANIA RAILROAD Co., Plaintiff, v.
R. C. A. RUBBER Co., Defendant.

Common Pleas Court, Summit County.

Nos. 169595, 170106, 170107, 170384, 170385, 170663.

Decided December 17, 1951.

Wise, Roetzel, Maxon, Kelly & Andress, Akron, for plaintiffs in Case Nos. 169595 & 170663.

Schnell & Belden, Akron, for defendants in Case Nos. 169595 & 170663.

Wise, Roetzel, Maxon, Kelly & Andress, Akron, for plaintiffs in Case Nos. 170106 & 170107.

Charles F. Schnee, Akron, for defendants in Case Nos. 176106 & 170107.

Slabaugh, Guinther, Pflueger & Myers, Akron, for plaintiffs in Case Nos. 170384 & 170385.

Schnee & Belden, Akron, for defendants in Case Nos. 170384 & 170385.

## OPINION

By EMMONS, J.

The issues in this case raised by the pleadings filed herein came on to be heard upon the Agreed Statement of Facts, the testimony of Michael Levin taken by the defendants on deposition and the exhibits introduced in the taking of the deposition, together with the admissions made by the various pleadings, and upon consideration of the same and also of the extensive briefs submitted by the able counsel herein, the Court finds that the Miami Rubber Processing Company, Inc., as consignor, delivered to the Seaboard Airline Railroad Company shipments of a certain commodity for the defendants in the respective cases above noted, and that the respective plaintiffs herein were the ultimate carriers of the commodity set forth in the petitions. It is stipulated that in all these cases the shipments were delivered to the respective defendant companies under and subjct to the provisions of the rules, regulations, orders, classifications and tariffs then in full force and effect. Further, the Miami Rubber Processing Company described the commodity shipped as "scrap rubber," excepting in those commodity shipments in which the Baltimore & Ohio Railroad Company was the ultimate carrier, and therein the commodity was described as "scrap rubber for reclaiming purposes only."

It is further stipulated that the defendants paid tariff to the respective plaintiffs in the sum of 83 cents per hundred pounds for the commodity shipped, which amount was the rate for scrap rubber, while the plaintiffs claim that the rate should

have been $1.63 per hundred pounds, the rate for reclaimed rubber. It is agreed by the parties herein that if the commodity is properly classified as scrap rubber the petitions should be dismissed. But if the Court should determine the commodity was in fact reclaimed rubber then the respective plaintiffs should have a judgment for the various amounts set forth in their respective petitions.

It is further stipulated that the classifications of rubber articles under the then tariff rates were contained in Consolidated Freight Classifications No. 17, I. C. C., Ohio C. No. 61, pages 393 and 394, and that at the time of movement of said commodity there was an exception to the above referred to classifications for shipments originating in the Southern Railroad District.

The commodity so shipped by the plaintiffs to the various defendants was procured from the Miami Rubber Processing Company by the defendants for the following reasons:

1. The Ace Rubber Products, Inc., purchased this commodity because it desired a product of rubber content containing fabric fibers, which was to be used by it in the manufacture of matting and shim stock for automobile anti-rattlers. It desired a commodity with fiber in it to give it greater strength.

2. The R. C. A. Rubber Company purchased this commodity because it desired a product of rubber content containing fabric fibers for mixing with other materials in connection with the manufacture of floor covering.

3. Tanney-Costello, Inc., is a broker, and its only interest in said commodity was for the purpose of resale to such manufacturers as the R. C. A. Rubber Company and Ace Rubber Products, Inc.

Both the R. C. A. Rubber Company and Ace Rubber Products, Inc., found the commodity unsatisfactory for the purpose intended, and some of the commodity was sent to a reclaiming plant to be refined.

It is further stipulated that the Miami Rubber Processing Company, in preparing the commodity for shipment, performed six of the fifteen steps set out in the digester process of reclaiming rubber, five of the eleven steps set forth in the heater process, and six of the twenty steps set forth in the acid process.

It is also agreed that the plaintiffs are claiming the commodity as being analogous to the classification in Consolidated Freight Classification No. 17 which includes: "Rubber, reclaimed, noibn (a term used to mean 'not otherwise indexed by name') loose or in packages." While the defendants claim the proper classification of the commodity appears in Sup-

plement 57 of the exceptions to the Southern Classification, which includes: rubber, scrap, noibn. Rubber scrap as referred to includes scrap tires or worn-out rubber boots, shoes, belting, clothing, clothes wringer rollers, tires, hose, mats, matting, packing or similar old worn-out rubber articles, or scraps or pieces of cloth coated or impregnated with rubber, having value only for reclamation of raw materials.

There is no argument as to where the burden of proof is in this type of case. The plaintiffs must prove affirmatively all material allegations of their respective petitions, and since they have alleged that the commodity was reclaimed rubber and are suing for the rate of reclaimed rubber, they must prove that fact by the greater weight of the evidence, nor is there any dispute with the rule: "Where the meaning is doubtful such provisions are to be construed in favor of the shipper."

Classification No. 17, part 39685 and the Exceptions to the Southern Classification Supplement 57, hereinbefore set out, refers to various items, among them being tires and so forth, and it is urged by counsel for the plaintiffs that since these tires have been submitted to some processes, particularly "cracking," they then do not conform to the items referred to in said classification or exceptions, and therefore they are reclaimed rubber.

There are certain steps and methods used to reclaim, as are set out in the stipulation filed herein, and all of these methods were partially used. However, in the final analysis, the commodity as shipped was a "mongrel compound."

Counsel for the plaintiffs set out in their briefs the fact that the price of the commodity was sold for approximately $160.00 a ton to the defendants, whereas, scrap tires were selling for $15.00 to $35.00 per ton, and by reason of the difference in price the commodity could not be scrap, therefore it must be reclaimed rubber. However, there was the undisputed testimony of Levin to the effect that the selling price of this commodity in question—which they call "Rubcel"—was not comparable in price to reclaimed rubber, even though it differed in price with scrap rubber.

In Crancer v. Louden, 315 U. S. 631, it was held that the fact that the consignees intended to use the commodity for another purpose other than scrap rubber did not change the character of the commodity.

The test of the character of a commodity must be determined by its nature and content, and thereafter the purpose for which it was intended and the reasonableness of the classification.

C. F. Lytle Company v. Atchison, Topeka & Sante Fe Railroad Company, 273 L. C. C. 539:

"The use to which an article is put may be helpful in determining what the article is, but the nature of the article shipped rather than the use to which it is put, that is controlling in the determination of the applicable rate."

Also see Sonken-Galamba Corp. v. Union Pacific Railroad Company, 145 Fed. (2nd) 808; August Plantz, Inc. v. Atlantic & East Carolina Railroad Company, I. C. C., case No. 30062.

In the instant case this commodity was processed to some extent. It was produced by cracking old scrap tires, which means grinding the rubber tread and the fabric together after the removal of the beads, thereafter 4 pounds of oil was added to each 65 pounds of the ground product, and then subjected to steam heat; after that 8 pounds of wax was added to every 80 pounds of the ground material, and finally clay was added to generate heat as the product went through a hot roll, and then came out in a continuous sheet.

United States v. Gulf Refining Company, 268 U. S. 542:

"Syllabus 1. Where a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable.

"Syllabus 2. Where two designations and tariffs are equally appropriate, shippers are entitled to have applied the one specifying the lower rates.

"Syllabus 3. A lower rate properly may be applied to a product when in an unfinished condition than that applicable to it when finished."

In Illinois Central Railroad Co. v. McCall, 147 Fed. 925, steel rails had been cut into smaller lengths than ordinary steel rails, and the consignee claimed that the steel rails cut in shorter lengths were not properly classified as steel rails. The Court held that notwithstanding they had been cut into shorter lengths the rails were still steel rails for the purposes of classification.

It is to be remembered that in the case cited supra the product started as a finished product and not scrap, while in this case the product was scrap at the time the various processes were started, and the Court held that regardless of the work performed in cutting these rails into shorter lengths, they were still rails for classification purposes. So conversely, the work done in preparing the produce in the instant case by subjecting it to the various processes, does not in and of itself make reclaimed rubber out of the scrap tires.

Aside from the stipulation the Court has only the uncontroverted testimony of Levin, who the Court finds is qualified as an expert, and in his deposition he definitely states that in

his opinion the product his company manufactured was not reclaimed rubber. However, without this opinion the Court finds that the commodity in question is a nondescript one consisting of 30 per cent rubber, 25 per cent cellulose and the remaining 45 per cent filler substance, which commodity Levin testified was definitely scrap.

It is true that a tree cut into boards is no longer a tree, as one attorney set out in his brief, yet the identity and nature of the material is not lost by reason of the change—the substance is still wood. So also is it true that a scrap rubber tire ground up into small particles loses its identify as a scrap tire but, excepting for the bead that has been removed, the content is a mixture of the same composition, nor would the addition of wax, heat, oil and clay change this substance to reclaimed rubber.

The **Saalfield Publishing Co. v. Public Utilities Commission of Ohio, 149 Oh St 113:**

"Where the meaning of the provisions of the rate schedule is doubtful and ambiguous they are to be construed favorably to the shipper. If a commodity shipped is included in more than one description in a rate schedule, that which is more specific will be held applicable, and where two tariff rate items are equally applicable and appropriate to a commodity the shipper is entitled to that specifying the lower rate."

Rule 17 of the Consolidated Freight Classification provides:

"When articles not specifically provided for nor embraced in the classification as articles noibn are offered for transportation, carriers will apply the classification provided for articles which in their judgment are analogous."

The commodity shipped in the instant case does not fit any classification, as did the slipper fit Cinderella's foot, however, it is certainly more analogous to scrap rubber than to reclaimed, but assuming the two tariff rates were equally applicable, then under the law the defendants would be entitled to the classification specifying the lower rate, which in this instance is scrap rubber.

It is clear to the Court that there should be an added classification to include such items as the product noibn. However, since such has not been done, under the law the Court finds the commodity falls within the classification of scrap rubber, that being more applicable than the category of reclaimed rubber, and therefore, the issues raised by the pleadings are resolved in the defendants' favor, and the respective petitions should be dismissed.

Journal entry to be prepared to conform to the Court's finding, saving exceptions to the plaintiffs.